IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Oscar Zarate Sorcia, #338247,       ) | CIVIL ACTION NO. 9:10-2827-JFA-BM |
| ) | |
| Plaintiff,       ) | |
| ) | |
| v.                                  ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Sgt. Smith, Sgt. Lewis, and         ) | |
| Administrator James Dorriety        ) | |
| ) | |
| Defendants.      ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants while he was incarcerated at the Greenville County Detention Center.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 12, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 14, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to Defendants' motion on May 18, 2011.



- 1 -

9:10-cv-02827-JFA     Date Filed 06/14/11    Entry Number 24     Page 2 of 10

The Defendants' motion is now before the Court for disposition.[1]

**Background and Evidence**

Plaintiff alleges in his verified complaint[2] that the Defendants violated his constitutional rights by denying him due process when they refused to release him on bail after bail was paid. Plaintiff alleges that he paid his required bail through a bail bondsman on or about July 17, 2009, but that he was not released and remained in jail until his trial on December 2, 2009. Plaintiff also alleges that he apparently could have been picked up by an immigration agent if he had been released, although this allegation is not clear. Plaintiff alleges that the Defendants' conduct resulted in emotional suffering and trauma, and he seeks monetary damages as well as payment for any medical expenses incurred. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Scotty Bodiford, who attests that he is the administrator of the Greenville County Detention Center. Bodiford attests that he has attached to his affidavit true and accurate copies of the Plaintiff's GCDC booking record, the order for bail signed by Judge Edward Miller, the Immigration and Customs Enforcement Detainer concerning the Plaintiff, the Magistrate Judge's discharge order, and a November 19, 2009 memo from the Defendant Dorriety to the Plaintiff.

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



Bodiford attests that Plaintiff was booked into the detention center on December 12, 2008 following his arrest on twenty three (23) criminal charges. On January 16, 2009 Judge Miller set bail at $100,000.00 with Plaintiff to be placed on electronic monitoring before he could be released. Bodiford attests that Plaintiff did not satisfy the conditions of his bail, and therefore remained in the custody of the detention center. Bodiford further attests that on May 19, 2009, Immigration and Customs Enforcement (ICE) filed an immigration detainer with the detention center, requiring the detention center to turn Plaintiff over to ICE custody for potential deportation proceedings if he was released on his state charges.

Bodiford attests that Plaintiff's family purchased a bond to satisfy the financial condition of Plaintiff's bail on July 20, 2009, but that the detention center could not release Plaintiff because he would have had to have been turned over to ICE custody and could therefore not have met the electronic monitoring requirement of his bail order. Plaintiff's attorney then filed a motion to modify Plaintiff's bond conditions, and Plaintiff was subsequently released to ICE custody on November 23, 2009. However, Plaintiff was returned to the Detention Center on December 1, 2009 to attend trial on his state criminal charges, and Bodiford attests that Plaintiff received a custody sentence on December 2, 2009. On December 7, 2009 Plaintiff was turned over to the custody of the South Carolina Department of Corrections.

Bodiford attests that the Defendant Dorriety is the Assistant County Administrator for Public Safety and the Director of the Detention Center, but that Dorriety was not involved with the initial issue concerning Plaintiff's bail and his ICE hold, since he [Bodiford] is the one charged with the day to day operations of the Detention Center. Bodiford attests that Dorriety's only direct involvement with Plaintiff's release issue was to send Plaintiff the November 19, 2009 memorandum



informing him that Dorriety had spoken with Bodiford, the Defendant Lewis and the Defendant Smith about the matter, and advising Plaintiff that he remained in custody because his bail required home monitoring which could not be done if Plaintiff was released to ICE custody. This memorandum also informed Plaintiff that his attorney was seeking a hearing with the court to address this problem. Bodiford attests that Dorriety had no other direct involvement with Plaintiff concerning the issue of his release from the detention center.

Bodiford attests that the Defendant Sergeant Dana Lewis handles population management at the detention center and is the gatekeeper for orders that affect detainees. Bodiford attests that it was not Lewis' job to decide whether or not to release a particular detainee, and that Lewis' only role in Plaintiff's release was to inform Plaintiff's attorney that the Plaintiff could not be released because of the problem with the ICE detainer. As for the Defendant Sergeant Jason Smith, Bodiford attests that Smith is an Operations Sergeant at the detention center, and that his role with regard to the Plaintiff was that he was involved with the transfer of custody to ICE. <u>See generally</u>, <u>Bodiford Affidavit</u>, with attached Exhibits.

As an attachment to his response to the Defendants' motion, Plaintiff has submitted an affidavit wherein he attests that Plaintiff's mother paid a bondsman to secure his bond in June and July of 2009, following which a Magistrate Judge issued a discharge order. <u>See</u> <u>also</u>, Defendants' Exhibit [Discharge Order]. Plaintiff attests in his affidavit that after he learned that his family had secured his bail, he was advised by the Defendant Smith that a hold had been placed against him by another agency, and that they could not release him until that hold had been removed. Plaintiff attests that Smith instructed him to write a 502 request form to the Defendant Lewis, who then also advised Plaintiff that he had a hold placed against him and that Plaintiff would have to speak to his

- 4 -



attorney or judge concerning this hold. Plaintiff attests that he was not informed that the hold was from ICE, or that the monitoring device ordered by Judge Miller played a part in the jail's refusal to release him on bond.

Plaintiff attests that two weeks after he wrote Lewis, the Defendant Dorriety came through the unit for inspection and he questioned Dorriety about why he was being detained. Plaintiff attests that Dorriety stated that he would get back to the Plaintiff concerning his release, and that approximately six weeks later he received a reply from Dorriety's office which stated Plaintiff had a hold placed on him by ICE, which was responsible for Plaintiff's continued confinement. Plaintiff attests that he appeared before Judge Miller in August 2009 for a modification of the conditions of his bail, that Miller stated that he would remove Plaintiff's electronic monitoring condition, and that he would give ICE until November 2009 to assume Plaintiff's custody. Plaintiff attests that on November 11, 2009, Judge Miller issued an order giving ICE seventy-two hours in which to assume Plaintiff's custody or he would be released. Plaintiff attests that ICE then transported him from the detention center to another detention center in North Carolina on November 23, 2009, where he was housed for one week before being returned to South Carolina. Plaintiff attest that during that week in North Carolina no proceedings were held, nor was he given access to legal representation. Plaintiff attests that he was returned to the Greenville Detention Center on December 1, 2009, and appeared in Greenville County Circuit Court on December 2, 2009, where he was sentenced to prison.

Plaintiff asserts in his affidavit that the Defendants never indicated that anyone other than themselves made the decision to ignore the Magistrate Judge's order to release him, and that his family did not receive a refund of any portion of the money paid to the bail bondsman. Plaintiff



also asserts that ICE did not place a hold on him until after his family had paid a substantial portion of the fee to the bonding company. See generally, Plaintiff's Affidavit, with attached exhibits [Bond Company receipts for payment].

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

As public employees, the Defendants are subject to suit under § 1983 for damages in their individual capacities. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). However, the Defendants argue that, even though subject to suit under §



1983, they are entitled to dismissal of Plaintiff's claims on the basis of qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the Court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a government official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harwell, 457 U.S. at 818. "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level but at the level of its application to the specific conduct being challenged." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) . . . As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).

The question thus becomes whether, considering the facts and evidence in the light most favorable to the Plaintiff, the Plaintiff has set forth allegations sufficient to give rise to a genuine issue of fact as to whether any Defendants' conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. The evidence does not support such a finding in this case. Considered in the light most favorable to the Plaintiff, the evidence before this Court shows that the Defendants did not facilitate Plaintiff's release on bond because, they told Plaintiff, there was a detainer on him preventing his release. It is undisputed in



the evidence that there was in fact an ICE detainer that had been placed on the Plaintiff. It is also undisputed in the evidence that Plaintiff could not meet the electronic monitoring requirement of the bond set by Judge Miller.

The fact that the Magistrate Judge signed a discharge order indicating that the monetary amount of Plaintiff's bond had been met does not in any way establish or infer that any named Defendant violated Plaintiff's constitutional rights by not facilitating his release in light of the established facts in this case that Plaintiff both had an ICE detainer on him as well as that he could not meet the electronic monitoring requirement of the bond. Even Plaintiff concedes that his attorney had to go back to the Court to seek a change in his bond conditions just to get him turned over to ICE. Further, once Plaintiff was turned over to ICE he was outside of the Defendants' jurisdiction, and any complaints Plaintiff has about his detention by the Department of Homeland Security are not prosecutable against these Defendants.

The undersigned can discern no constitutional violation committed by these Defendants because they failed to facilitate Plaintiff's release from custody when Plaintiff could not meet the conditions of a bond that had been set by a judge, and when Plaintiff also had a detainer that had been placed against him by another governmental agency, all of which is undisputed in the evidence before this Court. While it is regrettable that Plaintiff's family paid the fee to a bondsman to obtain the monetary security necessary for execution of his bond, which was then not returned when Plaintiff was unable to be released on bond, that again is also not the fault or responsibility of any of these three Defendants, who did not have the authority to release Plaintiff from custody in violation of a court order, or in violation of a detainer which had been placed on the Plaintiff by another governmental agency. Plaintiff's claim is patently without merit, and should be dismissed.



Wood v. Strickland, 420 U.S. 308, 322 (1975)[Complaint dismissed where there was no basis on which to find from the allegations of the complaint that the defendant took any action with "the malicious intention to cause a deprivation of constitutional rights or other injury . . .".]; Wiley, 14 F.3d at 995 ["[I]f there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 14, 2011
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

- 10 -

